U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

**NOV 2 0 2007**

ROBERT H. SHEMWELL, CLERK
BY _____
          DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TONYA HOFFPAUIR | : | DOCKET NO.  06-1939 |
| VS. | : | JUDGE MINALDI |
| AETNA LIFE INSURANCE CO. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 10], filed by the defendant Aetna Life Insurance Company ("Aetna").  The plaintiff, Toyna Hoffpauir ("Hoffpauir"), did not file an opposition.

## FACTS

Hoffpauir filed suit contesting Aetna's termination of her permanent disability benefits. On April 15, 1992, Hoffpauir became an employee of Cox Enterprises in Lake Charles.[1]  She enrolled in Cox's benefits plan and purchased disability insurance[2] from Aetna.[3]  While

---

[1] Compl. ¶ 3.

[2] The plan provides for disability benefits for employees who meet the plan's definition of total disability, which is "in the first 24-month period of disability, you cannot perform the material duties of your own occupation solely because of injury or illness, and after the first 24-month period of disability, you cannot work at any reasonable occupation, solely because of injury or illness."  Flexible Benefits Plan (Ex. 1).

[3] Compl. ¶ 4.

1

employed with Cox, Hoffpauir developed fibromyalgia[4] and receives treatment from Enrique

Mendez, M.D., who is board certified in rheumatology and internal medicine.[5]

Hoffpauir initially filed her claim for disability benefits under the Plan on December 19,

2002.[6] On June 10, 2003, Aetna denied Hoffpauir's claim because she returned to work on

March 31, 2003, which was within the six month waiting period for obtaining benefits.[7]

On October 7, 2003, Hoffpauir filed her second claim for permanent disability benefits,

which Aetna denied by letter March 23, 2004 for lack of documentation to support her inability

to perform her occupation.[8] On April 5, 2004, Hoffpauir filed an appeal from the decision to

deny her claim.[9] Dr. Hall, Aetna's medical consultant, reviewed Hoffpauir's file, and on August

30, 2004, Aetna determined she was entitled to disability benefits.[10] On October 8, 2004, Aetna

sent a letter to Hoffpauir reinstating her benefits and finding that she was unable to perform the

material duties of her occupation starting December 11, 2003, and continuing to the present.

On February 17, 2005, Aetna sent Hoffpauir a letter giving her notice that after December

---

[4] Fibromyalgia is a common, but "elusive and mysterious" disease. RIA Pension & Benefits Library, Bene. Analysis, p. 112,613.4 (2007). Its causes are unknown, there is no cure, and its symptoms are entirely subjective. *Id.* There are no laboratory tests for fibromyalgia, and the symptoms are "pain all over, fatigue, disturbed sleep, stiffness," and having at least eleven out of eighteen tender spots. *Id.* The degree of pain, however, is subjective. *Id.*

[5] Compl. ¶ ¶ 5-6.

[6] Admin. Rec. 64-65.

[7] *Id.* at 83-84.

[8] *Id.* at 86-89, 171-85.

[9] *Id.* at 119.

[10] *Id.* at 343-48.

11, 2005 (the twenty-four month waiting period), she would need to present medical documentation showing she could not work in <u>any</u> reasonable occupation solely because of her injury or illness to receive long-term disability benefits.[11]  To continue receiving benefits after December 11, 2005, Hoffpauir must satisfy a more strict "any occupation" test and present objective medical evidence that she is not able to perform any reasonable occupation.[12]  The information requested included Claimant's Questionnaire, Disability Income Questionnaire, Attending Physician's Statement, a Capabilities and Limitations Worksheet, and an Authorization to Obtain Medical Information.[13]  On March 14, 2005, Hoffpauir submitted all of the requested documents through her counsel.  The Attending Physician's Statement that stated she had no ability to work.[14]  She also submitted the Capabilities and Limitations Worksheet, the Authorization, the Disability Income Questionnaire, and the Questionnaire.[15]

On April 1, 2005, Aetna sent a letter to Hoffpauir informing her they did not receive the documents requested in its February 17, 2005 letter.[16]  Aetna again sent Hoffpauir letters on October 4, 2005 and November 8, 2005 stating it did not receive any of the requested documentation.[17]  On November 15, 2005, Hoffpauir submitted the Attending Physician's

---

[11]  *Id.*  at 364-69.

[12]  *Id.*  at 343-48.

[13]  *Id.*

[14]  *Id.*  at 372-73.

[15]  *Id.*  at 370-81.

[16]  *Id.*  at 382.

[17]  *Id.*  at 390-99.

Statement, Long Term Disability Employee Questionnaire, Other Income Questionnaire, and Capabilities and Limitations Worksheet.[18]

On December 8, 2005, the disability benefits were terminated because Aetna determined that Hoffpauir had not presented sufficient documentation that she was disabled as defined under the plan, but without any change in the medical condition of Hoffpauir.[19] Aetna's letter stated that there is "no objective medical evidence" to support the contention that Hoffpauir is unable to perform the duties of her own occupation, as well as "there is no medical evidence to support [the statement that Hoffpauir is disabled]."[20] Aetna also found that there was insufficient medical basis presented for Dr. Mendez's statements that Hoffpauir has fibromyalgia and has no ability to work.[21]

On May 2, 2006, Hoffpauir appealed the termination of benefits.[22]  Hoffpauir submitted deposition testimony of Dr. Mendez that she is unable to work, documentation of years of office visits to Dr. Mendez, several medical records and rounds of testing, and documentation of her sessions with Lake Physical Therapy.[23]  As part of its review, Aetna asked Dr. Robert N. Anfield to examine of Hoffpauir's medical records and medical evidence.[24]  Dr. Anfield concluded that

---

[18] *Id.* at 403.

[19] *Id.* at 417-20.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 422.

[23] *Id.* at 403-544.

[24] *Id.* at 545-48.

4

Dr. Mendez's medical records are not persuasive in demonstrating that Hoffpauir is physically and cognitively impaired, and noted that Dr. Mendez's conclusions are largely based upon Hoffpauir's self report.[25]  Dr. Anfield also concluded that the medical record does not contain observations on Hoffpauir's impaired physical or cognitive function, impaired musculosketal function, functional assessments of capacity evaluations, exercise testing, and mental status examinations and neuropsychological testing.[26]  Dr. Anfield also noted that fibromyalgia is "intended only to identify populations for research" rather than clinical use, and the label "does not imply a pathophysiological explanation for the symptoms."[27]  Furthermore, Dr. Anfield stated that patients with fibromyalgia should be encouraged to remain active in their vocations.[28]

On June 22, 2006, Aetna denied the appeal of Hoffpauir for disability benefits based on Dr. Anfield's review, stating that "Ms. Hoffpauir's file did not show evidence of a severe impairment that would have functionally impaired her from December 9, 2005 forward."[29]  Hoffpauir filed this suit on October 26, 2006.

## JURISDICTION

Hoffpauir's claim to recover long term disability payments "relates to an employee benefit Plan," thus falling within the scope of ERISA's preemption provision. "It is clear that ERISA preempts a state law cause of action brought by an ERISA Plan participant or beneficiary

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Compl. ¶ 10.

alleging improper processing of a claim for Plan benefits." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987)). As an employee, Hoffpauir comes under the rubric of ERISA as a participant. 29 U.S.C. § 1002(7). She is able to assert her claim pursuant to ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that any suit falling within this provision, even if it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987). Thus, Hoffpauir raises a federal question and jurisdiction properly lies with this court.

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Federal Rules also permit a court to issue summary judgment on a portion of a plaintiff's claim. FED. R. CIV. P. 56(a) & (c). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for

6

summary judgment, the court must view all facts in the light most favorable to the nonmoving

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no

genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a

whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## STANDARD OF REVIEW UNDER ERISA

A denial of ERISA benefits by a Plan administrator is reviewed by a court *de novo* unless

the Plan gives the Plan administrator "discretionary authority to determine the eligibility for

benefits or to construe the terms of the Plan." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th

Cir.1994) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). The abuse of

discretion standard is the appropriate standard of review for challenges to a Plan administrator's

interpretation of the Plan terms when that Plan grants the administrator the authority to make a

final and conclusive determination of the claim. *Duhon*, 15 F.3d at 1305 (*citing Bruch*, 489 U.S.

at 115). Here, because Aetna had discretionary authority to determine the eligibility for benefits

or construe the terms of the Plan, the proper standard is abuse of discretion.

In applying the abuse of discretion standard, the court must analyze whether the Plan

administrator acted arbitrarily or capriciously. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97

F.3d 822, 829 (5th Cir. 1996).[30] An ERISA claim administrator's determination is not an abuse

of discretion when it is supported by substantial evidence. *Meditrust Fin. Sers. Corp. v. Sterling

Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). When reviewing an administrator's

determinations, the court is limited to the evidence in the administrative record at the time the

---

[30] In the Fifth Circuit, the abuse of discretion standard is the same as the arbitrary and capricious standard. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533 (5th Cir. 2007).

determination was made. *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001).

In the Fifth Circuit, a two-part test is utilized when reviewing a Plan administrator's denial of benefits under the arbitrary and capricious standard:

> First, a court must determine the legally correct interpretation of the Plan. If the administrator did not give the Plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the Plan was legally correct, a court must consider: (1) whether the administrator has given the Plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the Plan, and (3) any unanticipated costs resulting from different interpretations of the Plan.

*Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637-38 (citations omitted).

If a court concludes that the administrator's interpretation is legally incorrect, the court must then determine whether the administrator abused his discretion. Three factors are important in this analysis: (1) the internal consistency of the Plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. *Id.* "Only if the court determines that the administrator did not give the Plan the legally incorrect interpretation, must the court then determine whether the administrator's decision was an abuse of discretion." *Gosselink v. American Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).

When, however, "the case does not turn on sophisticated plan interpretation issues," the court is not required to apply the two-step process of *Wildbur*. *Kolodzaike v. Occidental Chem Corp.*, 88 F. Supp.2d 745, 748 (S.D. Tex. 2000). Rather, the court can simply assess whether Aetna abused its discretion in determining that Hoffpauir's disability benefits should be terminated. *See id.* Thus, to grant Aetna's motion for summary judgment, this court must find there is no material issue of fact in the record as to whether Aetna's termination of Hoffpauir's disability benefits is supported by substantial evidence.

## ANALYSIS

8

The Fifth Circuit, as well as other circuits, has recognized that fibromyalgia is a disease that can lead to an award of disability and social security benefits. *Adams v. Unum Life Ins. Co. of America*, 2005 WL 2030840 (S.D. Tex. 2005). Furthermore, courts have held that it is "*prima facie* unreasonable to require claimants to submit objective evidence of the etiology of the disease, given that there are no recognized objective laboratory tests." *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3d Cir. 1997). Several courts have, however, noted that fibromyalgia can be somewhat objectively diagnosed through the "eighteen point test," which requires that the patient be sensitive to at least eleven pressure points. *See Karvelis v. Reliance Standard Life Insurance*, 2005 WL 1801943 (S.D. Tex. 2005).

Aetna bases its termination of Hoffpauir's benefits on the premise that fibromyalgia is not an illness, but is "simply a grouping of individuals with similar symptoms for research purposes...and is generally not intended to be used by clinical purposes."[31] Aetna also states that "the recommended treatment for persons falling within that grouping is that they continue to work..."[32] In Aetna's December 8, 2005 letter denying medical benefits to Hoffpauir, Aetna states that there is "insufficient medical basis presented" that Hoffpauir has fibromyalgia.[33] The letter further states that "there is evidence that Ms. Hoffpauir is disabled, but there is no medical evidence to support those statements."

When Aetna terminated Hoffpauir's benefits in December 2005, Aetna had Dr. Robert Anfield review her file. Dr. Anfield concluded that Hoffpauir had no physical functional limitations.[34] Dr. Anfield also stated that Dr. Mendez's diagnosis was "informed solely by her self report," and that the eighteen point pressure test is subjective since it relies only on

---

[31] Def.'s Mot. for Summary Judgment 20.

[32] *Id.*

[33] Admin. Rec. 417-21.

[34] *Id.* at 545-48.

Hoffpauir's report of tenderness.[35]  Aetna's termination letter states that there is "insufficient medical basis presented" for the diagnosis of fibromyalgia, even though Dr. Mendez used the eighteen point test at every office visit and Hoffpauir was always sensitive to at least eleven pressure points.[36]  Aetna's letter appears to reject fibromyalgia as a disease, a stance that courts uniformly reject. Aetna also appears to require Hoffpauir to objectively prove she has fibromyalgia, which courts have also consistently forbidden insurance companies from doing due to the elusive nature of fibromyalgia.  Thus, Aetna cannot legally premise its termination of disability benefits upon Hoffpauir's failure to objectively prove she has fibromyalgia or failing to recognize fibromyalgia as a legitimate disease.

Cognizant that in ERISA plan benefit matters, courts cannot give more weight to the treating physician's diagnosis than the reviewing physician's diagnosis, the record nonetheless indicates Aetna's own consulting physicians' inconsistencies. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).  When Aetna reinstated Hoffpauir's benefits in August 2004, Aetna's reviewing physician, Dr. William Hall, concluded that Hoffpauir's diagnosis of fibromyalgia satisfied the American Rheumatologic Association's definition of the disease.[37]  Dr. Hall also concluded that Hoffpauir's musculosketal symptoms were totally medically limiting.[38] Aetna's conclusion that there is insufficient medical basis for Hoffpauir's diagnosis of fibromyalgia is not supported by substantial evidence, given Aetna's own consulting physicians' inconsistencies in the administrative record .

Aetna can, however, ask Hoffpauir to objectively prove that her fibromyalgia prevented her from performing the duties of her own occupation.  "The cases consistently recognize that an

---

[35] *Id.*

[36] *Id.* at 40.

[37] *Id.* at 96-98.

[38] *Id.*

insistence on objective evidence of restrictions and limitations is not arbitrary and capricious." *Adams*, 2005 WL 2030840 *32. In Aetna's December 8, 2005 letter denying medical benefits to Hoffpauir, Aetna also terminated benefits because there was "insufficient medically documented support of impairment concerning Ms. Hoffpauir's ability to perform her own occupation."[39]

Based on Aetna's termination letter and Dr. Anfield's analysis, which provides the review upon which the termination was based, it is not apparent that Aetna premised its termination on Hoffpauir's failure to prove she is unable to perform her job or any job, which is a proper basis for termination, or on the notion that fibromyalgia is not a disease, or if it is a disease, the lack of "objective" proof–both of which are improper bases for termination. There is a triable issue of fact as to whether Aetna's termination of benefits is supported by substantial evidence. Thus, the record does not warrant an award of summary judgment for Aetna.

## CONCLUSION

There is not substantial evidence in the record to support Aetna's revocation of benefits. Specifically, the record is unclear whether Aetna's revocation of benefits was based upon Hoffpauir's failure to demonstrate she could not perform any occupation, which is the proper inquiry for a revocation of benefits if supported by substantial evidence. There is a triable issue of fact as to whether Aetna denied Hoffpauir's benefits because Aetna's second reviewing physician later determined that fibromyalgia is not a clinical disease or that Hoffpauir must prove objectively that she has fibromyalgia, both of which are improper grounds for a termination of benefits. Accordingly, Aetna's Motion for Summary Judgment is DENIED.

Lake Charles, Louisiana, this __19__ day of ___Nov___, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[39] *Id.* at 417-21.

11