**RECEIVED**
IN LAKE CHARLES, LA

JUN 1 5 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| TONYA HOFFPAUIR | : | DOCKET NO. 06-1939 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| AETNA LIFE INSURANCE CO. | : | MAGISTRATE JUDGE KAY |

## OPINION

Before the Court is the administrative record for the plaintiff Toyna Hoffpauir's claims arising from the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), against Aetna Life Insurance Company (hereinafter "Aetna"). The parties submitted trial briefs [docs. 45, 46, 47]. The matter was deemed submitted to the Court for a trial on the briefs on May 26, 2009.[1]

## PROCEDURAL HISTORY

On November 26, 2006, Hoffpauir filed this suit contesting Aetna's denial of her long-term disability (hereinafter "LTD") benefits. On October 8, 2007, Aetna moved for summary judgment [doc. 9]. In a November 20, 2007 Memorandum Ruling, this Court concluded that the administrative record was unclear as to whether Aetna premised its termination on Hoffpauir's failure to prove she is unable to perform her job or any job, which is a proper basis for terminating benefits, or based upon the notion that fibromyalgia is not a disease, or if it is a disease, based on the lack of objective proof, which are improper bases for termination [doc. 12].

Accordingly, Aetna filed a Motion to Admit Deposition Testimony or in the Alternative to

---

[1] Minutes (April 4, 2009) [doc. 44].

1

Remand the Case to the Administrator [doc. 39]. On December 15, 2008, this Court granted Aetna's motion insofar that it shall consider the portion of Carol Roy's deposition testimony that states Aetna has in the past awarded disability benefits for fibromyalgia [doc. 42]. Accordingly, this matter is now ready for disposition based upon the administrative record, the parties' briefs, and limited portions of Roy's deposition testimony.

## FACTS

The background facts underlying this matter were articulated in the Court's November 20, 2007 Memorandum Ruling [doc. 12]:

> On April 15, 1992, Hoffpauir became an employee of Cox Enterprises in Lake Charles.[2] She enrolled in Cox's benefits plan and purchased disability insurance[3] from Aetna.[4] While employed with Cox, Hoffpauir developed fibromyalgia[5] and receives treatment from Enrique Mendez, M.D., who is board certified in rheumatology and internal medicine.[6]
>
> Hoffpauir initially filed her claim for disability benefits under the

---

[2] Compl. ¶ 3.

[3] The plan provides for disability benefits for employees who meet the plan's definition of total disability, which is "in the first 24-month period of disability, you cannot perform the material duties of your own occupation solely because of injury or illness, and after the first 24-month period of disability, you cannot work at any reasonable occupation, solely because of injury or illness." Flexible Benefits Plan (Ex. 1).

[4] Compl. ¶ 4.

[5] Fibromyalgia is a common, but "elusive and mysterious" disease. RIA Pension & Benefits Library, Bene. Analysis, p. 112,613.4 (2007). Its causes are unknown, there is no cure, and its symptoms are entirely subjective. *Id.* There are no laboratory tests for fibromyalgia, and the symptoms are "pain all over, fatigue, disturbed sleep, stiffness," and having at least eleven out of eighteen tender spots. *Id.* The degree of pain, however, is subjective. *Id.*

[6] Compl. ¶¶ 5-6.

Plan on December 19, 2002.[7] On June 10, 2003, Aetna denied Hoffpauir's claim because she returned to work on March 31, 2003, which was within the six month waiting period for obtaining benefits.[8]

On October 7, 2003, Hoffpauir filed her second claim for permanent disability benefits, which Aetna denied by letter March 23, 2004 for lack of documentation to support her inability to perform her occupation.[9] On April 5, 2004, Hoffpauir filed an appeal from the decision to deny her claim.[10] Dr. Hall, Aetna's medical consultant, reviewed Hoffpauir's file, and on August 30, 2004, Aetna determined she was entitled to disability benefits.[11] On October 8, 2004, Aetna sent a letter to Hoffpauir reinstating her benefits and finding that she was unable to perform the material duties of her occupation starting December 11, 2003, and continuing to the present.

The plaintiff appeals the denial of her benefits, which was effective December 11, 2005. On February 17, 2005, Aetna sent Hoffpauir a letter giving her notice that after December 11, 2005 (the expiration of the twenty-four month waiting period), she would need to present medical documentation showing she could not work in <u>any</u> reasonable occupation solely because of her injury or illness to receive LTD benefits.[12] Accordingly, to continue receiving benefits after the twenty-four month period, Hoffpauir was required to satisfy a more strict "any reasonable occupation" test and present objective medical evidence that she is not able to perform any reasonable occupation.[13]

---

[7] R. 64-65.

[8] *Id.* at 83-84.

[9] *Id.* at 86-89, 171-85.

[10] *Id.* at 119.

[11] *Id.* at 343-48.

[12] *Id.* at 364-69.

[13] *Id.* at 343-48.

3

Aetna requested that Hoffpauir provide: Claimant's Questionnaire, Disability Income Questionnaire, Attending Physician's Statement, a Capabilities and Limitations Worksheet, and an Authorization to Obtain Medical Information.[14] On March 14, 2005, Hoffpauir submitted all of the requested documents through her counsel. The Attending Physician's Statement stated that she had no ability to work.[15] She also submitted the Capabilities and Limitations Worksheet, the Authorization, the Disability Income Questionnaire, and the Questionnaire.[16]

On October 4, 2005, Aetna sent Hoffpauir a letter requesting that Hoffpauir complete another Questionnaire and Disability Income Questionnaire, and that the Attending Physician Statement and Capabilities and Limitations Worksheet be completed based on a current examination.[17] Aetna also requested the doctor's notes for the last three office visits and information concerning the status of Hoffpauir's claim for Social Security benefits.[18]

On November 8, 2005, Aetna sent a follow-up letter stating that Aetna still had not received the requested documents.[19] Aetna gave Hoffpauir fifteen days in which to respond.[20] Aetna received the revised Capabilities and Limitations Worksheet, Attending Physician's Statement, Long Term Disability Employee Questionnaire, and Other Income Questionnaire Disability Benefits on

---

[14] *Id.*

[15] *Id.* at 372-73.

[16] *Id.* at 370-81. On the Capabilities and Limitations worksheet, Dr. Mendez stated that Hoffpauir was incapable of working. *Id.* at 374.

[17] *Id.* at 390-94.

[18] *Id.*

[19] *Id.* at 395-99.

[20] *Id.*

November 21, 2005.[21] Aetna states in its brief that it did not receive the doctor's notes for the last three doctor's visits or information pertaining to Hoffpauir's Social Security application.[22]

In a letter dated December 8, 2005, Aetna terminated Hoffpauir's disability benefits because Aetna had not received the requested office visit notes from Dr. Mendez, despite multiple requests.[23] Aetna concluded that "there was insufficient medically documented support of impairment concerning Ms. Hoffpauir's ability to perform her own occupation."[24] Based on the lack of documentation, Aetna stated that "there is no objective medical evidence."[25] Aetna also found that there was insufficient medical basis presented for Dr. Mendez's statements that Hoffpauir has fibromyalgia and has no ability to work.[26]

Aetna's letter also stated that Hoffpauir had the right to appeal the termination of benefits, and that she could submit additional information such as a detailed narrative report outlining in objective terms the specific physical limitations inherent to the condition, prognosis and course of treatment, frequency of visits, and medications prescribed; copies of diagnostic studies such as test results; any information specific to the condition for which Hoffpauir is claiming total disability; and

---

[21] *Id.* at 400-16.

[22] Def.'s Brief, at 9. In the Long Term Disability Employee Questionnaire, Aetna asks about the current status of any Social Security applications, to which Hoffpauir responds "Social Security Benefits on appeal. No court date yet." *Id.* at 415.

[23] *Id.* at 417-20.

[24] *Id.* at 418.

[25] *Id.*

[26] *Id.*

any other information.[27]

On May 2, 2006, Hoffpauir appealed the termination of benefits.[28] As supporting evidence, Hoffpauir submitted deposition testimony from Dr. Mendez that she is unable to work, dated June 22, 2004 and March 9, 2006, notes of office visits to Dr. Mendez dated March 7, 2006 and February 2, 2006, an MRI exam taken December 14, 2005, and updated records from Dr. Lopez.[29] In his March 9, 2006 deposition, Dr. Mendez explains that fibromyalgia is a clinical diagnosis, and that lab work, imaging studies, MRI, CAT scans, and blood work will all be normal.[30] Fibromyalgia is diagnosed by examining eighteen tender points; exhibiting eleven tender points merits a diagnosis of fibromyalgia.[31] Dr. Mendez testified that he performed the tender point test during each visit.[32]

On May 16, 2006, Aetna requested an update on the status of Hoffpauir's Social Security disability claim.[33] By letter dated June 22, 2006, Aetna denied Hoffpauir's appeal for LTD benefits.[34]

As part of its review, Aetna asked Dr. Robert N. Anfield to examine Hoffpauir's medical records and medical evidence.[35] Considering the medical and clinical evidence, including the

---

[27] *Id.*

[28] *Id.* at 422.

[29] *Id.* at 403-544.

[30] *Id.* at 434.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 539.

[34] *Id.* at 549-51.

[35] *Id.* at 545-48.

supplemental documentation submitted for the appeal, Dr. Anfield concluded that "the medical records do not demonstrate that Ms. Hoffpauir has either physical or cognitive functional limitations...the record does not demonstrate a medical contraindication to Ms. Hoffpauir working in her own or any occupation."[36] Dr. Anfield stated that documentation of certain medical evidence was lacking from her file; namely: observations demonstrating impaired physical or cognitive function; physical examination findings demonstrating impaired musculoskeletal function; functional assessments or functional capacity evaluations demonstrating impaired physical function; exercise testing demonstrating diminished cardiopulmonary endurance; and mental status examinations and neuropsychological testing demonstrating impaired cognitive function of sufficient severity to preclude work.[37]

Dr. Anfield found that Dr. Mendez's records consistently documented the number of tender points, which he states is a subjective sign because it relies upon an individual's report.[38] Dr. Anfield concluded, however, that Dr. Mendez's records are "not persuasive" in demonstrating that Hoffpauir is physically impaired because Dr. Mendez's opinion is "informed solely by her self report."

Dr. Anfield also noted that fibromyalgia is "intended only to identify populations for research" rather than clinical use, and the label "does not imply a pathophysiological explanation for the symptoms."[39] Furthermore, Dr. Anfield stated that patients with fibromyalgia should be encouraged

---

[36] *Id.* at 545.

[37] *Id.* at 546.

[38] *Id.*

[39] *Id.*

7

to remain active in their vocations.[40] Dr. Anfield also states that "the tender point is the 'sign' for [fibromyalgia] but has not been proven to be valid as the sign is not reproducible or specific for [fibromyalgia]."[41]

The June 22, 2006 letter stated that the original determination is upheld upon review. Carol Roy, the appeals specialist, largely relied upon Dr. Anfield's assessment in concluding that "[w]e have determined that the medical documentation in Ms. Hoffpauir's file did not show evidence of a severe impairment that would have functionally impaired her from December 9, 2005 forward, thereby indicating that she was able to perform her occupation from that point forward."[42] The letter adopts Dr. Anfield's conclusion that the "medical records do not demonstrate that Ms. Hoffpauir has either physical or cognitive functional limitations; in my opinion...the record does not demonstrate a medical contraindication to Ms. Hoffpauir working in her own or any occupation."[43] Roy also adopted Dr. Anfield's conclusion that Hoffpauir's medical evidence did not include certain items. Hoffpauir filed this suit on October 26, 2006.

## JURISDICTION

This matter involves a claim for disability benefits under an employee benefit plan governed by ERISA, 29 U.S.C. § 1001, *et seq.* Accordingly, this Court has federal question jurisdiction.

## STANDARD OF REVIEW

"When the ERISA plan vests the fiduciary with discretionary authority to determine

---

[40] *Id.*

[41] *Id.* at 547.

[42] *Id.* at 551.

[43] *Id.*

8

eligibility for benefits under the plan or to interpret the plan's provisions, 'our standard of review is abuse of discretion.'" *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2005) (quoting *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998)). Because Aetna had discretionary authority to determine the eligibility for benefits or construe the terms of the Plan, the proper standard is abuse of discretion.

"In this Circuit, we employ a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms." *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 227 (5th Cir. 2004).

> First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the Plan was legally correct, a court must consider:
> > (1) whether the administrator has given the Plan a uniform construction,
> > (2) whether the interpretation is consistent with a fair reading of the Plan, and
> > (3) any unanticipated costs resulting from different interpretations of the Plan.
>
> If a court concludes that the administrator's interpretation is incorrect, the court must then determine whether the administrator abused his discretion. Three factors are important in this analysis:
> > (1) the internal consistency of the Plan under the administrator's interpretation,
> > (2) any relevant regulations formulated by the appropriate administrative agencies, and
> > (3) the factual background of the determination and any inferences of lack of good faith.

*Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992).

When a case does not involve sophisticated plan interpretation issues, however, "the reviewing court is not rigidly confined to this two-step analysis." *Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 375 F. Supp.2d 724, 731 (S.D. Tex. 2005) (citing *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994)); *see also Adams v. Metro. Life Ins. Co.*, 549 F. Supp.2d 775, 787-88 (M.D. La. 2007).[44] Moreover, "[a] plan administrator's factual determinations are always reviewed for abuse of discretion..." *Vercher*, 379 F.3d at 226.

Hoffpauir does not contend that Aetna abused its discretion in construing plan terms, and

---

[44] Relying upon *Ellis*, Aetna argues that this Court must first analyze whether the claims administrator gave the Plan a legally correct interpretation. Def.'s Trial Brief at 12 [doc. 46]. Aetna states "While...in some cases it may not be necessary to follow the two step process, even assuming it may be appropriate in some cases to depart from that process, it clearly would not be appropriate here where the Claims Administrator interpreted the Plan to require objective medical evidence of the impairment." *Id.* n.44. Hoffpauir argues that because this does not involve issues of sophisticated plan interpretation, this Court can proceed to the second step of the analysis.

As stated above, this Court recognizes the two-step process the Fifth Circuit employs in reviewing a plan fiduciary's interpretation of its plan. Hoffpauir does not, however, argue that Aetna erred in interpreting its plan. Hoffpauir argues that Aetna's factual determinations that she is not disabled and that she is able to perform her job are an abuse of discretion. By contrast, the plaintiff in *Ellis* contested the plan administrator's interpretation of the word "all" in the plaintiff's LTD Policy. *Ellis*, 394 F.3d at 270 (applying the first prong of the test to determine whether "unable to perform all" meant "unable to perform any one" or whether it meant "not able to perform every").

There are several Fifth Circuit and district court cases reviewing the factual determinations of plan administrators in which the court did not apply the two-step process and instead considered whether the factual determinations were an abuse of discretion without first considering whether the plan administrator gave the plan a legally correct interpretation. *See, e.g., Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-402 (5th Cir. 2007); *Martin v. SBC Disability Income Plan*, 257 Fed. Appx. 751 (5th Cir. 2007); *Burtch v. Hartford Life & Accident Ins. Co.*, 08-30513, 2009 WL 714078 (5th Cir. 3/19/09); *Adams*, 549 F. Supp.2d at 787-88; *Barkley v. Life Ins. Co. of N. Am.*, 3:07-1498, 2008 WL 2901636 (N.D. Tex. 7/24/08).

therefore this case does not present sophisticated issues of plan interpretation. Rather, Hoffpauir argues that Aetna abused its discretion in denying her LTD benefits based upon its factual determinations that she is not disabled and that she is able to perform her own occupation. Accordingly, this Court shall review Aetna's factual determinations under an abuse of discretion standard. *See, e.g., Corry*, 499 F.3d at 397-402 (reviewing a plan administrator's denial of LTD benefits for abuse of discretion without first determining the plan's legally correct interpretation, where the denial of benefits hinged upon factual determinations surrounding the plaintiff's disability and whether she can perform full-time sedentary work and did not involve issues of plan interpretation).

The Fifth Circuit has stated:

> Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996).

*Id.* at 397-98. The *Corry* court further stated "[u]ltimately, "our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Id.* at 398 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)). In making a benefits determination, the plan administrator "does not abuse its discretion by relying on the medical

opinions of its consulting physicians instead of the medical opinions of a claimant's treating physicians." *Id.* at 402.

## ARGUMENTS

A.) Hoffpauir's Arguments

Hoffpauir argues that the Court considers three factors, all of which support a finding that Aetna did indeed abuse its discretion. First, Hoffpauir argues that Aetna's plan is internally inconsistent because Aetna has awarded disability benefits to other insureds who have fibromyalgia, but did not award her disability benefits. Second, Hoffpauir states that there are no regulations relevant to the interpretation of Aetna's plan. Third, Hoffpauir argues that the factual background of Aetna's determinations regarding Hoffpauir and inferences of lack of good faith support a finding that Aetna abused its discretion.

Hoffpauir places import on the fact that Aetna initially found that Hoffpauir satisfied the diagnostic criteria for fibromyalgia, found her symptoms to be totally medically limiting, and paid her LTD benefits. At the end of the first twenty-four months, Hoffpauir was required to satisfy a more strict "any reasonable occupation" test and present objective medical evidence that she is not able to perform any reasonable occupation. She states that despite submitting all of the documentation, Aetna denied her disability benefits. Hoffpauir notes that on November 8, 2005, Dr. Mendez completed the Capabilities and Limitations Worksheet, as requested by Aetna, and concluded that Hoffpauir was unable to work.[45]

Hoffpauir also argues that Aetna abused its discretion by hiring Dr. Anfield to serve as the reviewing physician, because he does not believe fibromyalgia to be a real illness. Dr. Anfield states

---

[45] R. 408.

that fibromyalgia is a "functional somatic syndrome" that is "intended only to identify populations for research." Dr. Anfield concluded that "there is no medical evidence to support" the statement that Hoffpauir is disabled. She therefore argues that basing its denial of benefits on Dr. Anfield's conclusions, when he does not find fibromyalgia to be a real condition, and where Aetna's physicians found in the past that she suffered from fibromyalgia, is an abuse of discretion.

B.) Aetna's Arguments

Aetna argues that it gave the plan the legally correct interpretation based on the three *Wildbur* factors. Aetna argues this Court's inquiry is over because courts do not reach the second step if the fiduciary gave the plan the legally correct interpretation; however, Aetna further argues that even if it did not give the plan the legally correct interpretation, it did not abuse its discretion.

Aetna argues that it did not abuse its discretion in denying Hoffpauir's LTD benefits because the appeals specialist concluded there was a lack of medical evidence showing that Hoffpauir was unable to perform her own occupation solely because of injury or illness. Aetna also argues that Hoffpauir's claim "amounts to a contention that Aetna must accept the opinion of her doctor over that of its reviewing physician." Aetna further argues that it was obligated to require that Hoffpauir provide evidence beyond the opinion of her treating physician that she was so disabled that she could not work even at a sedentary position. Aetna argues that Dr. Mendez's opinions are based almost exclusively on what Hoffpauir told him, with the exception of the tender point test.

In sum, Aetna argues that it was entitled to rely upon Dr. Anfield's opinions over the "self-reported symptoms of the plaintiff herself and the *ipse dixit* of her doctor who accepted these symptoms without question." Aetna lastly argues that the fact it awarded Hoffpauir benefits and later denied benefits is not indicative of bad faith.

13

## ANALYSIS

In *Corry*, the Fifth Circuit considered whether the defendant, Liberty, abused its discretion in terminating Corry's benefits. *Corry*, 499 F.3d at 398. The district court found Liberty was arbitrary in terminating Corry's benefits for her fibromyalgia because Liberty discounted Corry's subjective complaints in favor of clinical and objective findings. *Id.* (noting the district court emphasized the disparity between Corry's treating physicians and the reviewing physicians). Liberty argued it was entitled to give more deference to its reviewing physicians. *Id.*

The court first considered whether Liberty properly considered Corry's subjective evidence, and concluded that Liberty did. *Id.* Although Liberty's physicians focused on the absence of objectively verifiable medical evidence, Liberty specifically referred to Corry's complaints of pain in its denial letter. *Id.* at 400. Moreover, Liberty accepted Corry's diagnosis of fibromyalgia without requiring objective medical evidence to establish the disease. *Id.* (noting that all three reviewing physicians agreed that Corry had fibromyalgia, and to reach this conclusion they necessarily had to credit her subjective complaints of pain). The Fifth Circuit placed great import on the fact that "the administrator, and the medical experts upon which it relied, understood and accepted the diagnosis of fibromyalgia; and they considered the subjective evidence Corry offered." *Id.* at 401 (noting the administrator did not accept the opinion of Corry's experts as to the disabling effects of her symptoms, which, in a battle of experts, is permissible because the administrator is vested with the discretion to credit one expert over another).

The court next considered whether substantial evidence supports Liberty's conclusion that Corry can perform full-time sedentary work. *Id.* at 401-02. Given that the plan administrator credited the three consulting physicians, all of whom concluded that there was no objective medical

14

evidence supporting a finding of total disability, the court concluded that the determination that Corry can perform full-time sedentary work was supported by substantial evidence. *Id.* at 402.

Here, unlike the physicians in *Corry*, Aetna's sole reviewing physician does not recognize that fibromyalgia is a disease; instead, he classifies it as a "functional somatic syndrome." Dr. Anfield states that fibromyalgia is "a definitional construct not intended for clinical use, and intended only to identify populations for research." He also states that the tender point test for fibromyalgia "has not been proven to be valid as the sign is not reproducible or specific for [fibromyalgia]." As far as management "of patients with functional somatic syndromes," Dr. Anfield concludes that prolonged rest is harmful for patients, and these patients should remain active in their vocational activities. Thus, from Dr. Anfield's report, this Court gleans two points: 1) he does not recognize that fibromyalgia is a disease but is a definitional construct used only for clinical research, and 2) someone with fibromyalgia, or any "functional somatic syndrome" is not eligible for disability benefits because treatment for all of these individuals should include continued activity in their vocational, recreational, and avocational activities.

This Court concludes that Aetna abused its discretion in denying Hoffpauir's LTD benefits. The only evidence in the record supporting Aetna's denial of LTD benefits on appeal is Dr. Anfield's report. This Court finds that premising the denial of LTD benefits solely on a report of a physician who does not believe a particular disease exists, and does not believe that the proper treatment for that "definitional construct" can include the award of disability benefits, is an abuse of discretion. This Court perceives this conclusion as consistent with the Fifth Circuit's decision in *Corry*, because in *Corry*, the reviewing physicians found that Corry had fibromyalgia but was not disabled, whereas here, the reviewing physician does not acknowledge that fibromyalgia is anything more than a

15

construct used to identify populations for research. While this Court recognizes that Aetna may accept the opinions of its reviewing physicians over the opinions of the treating physicians, Aetna cannot base its denial of benefits solely upon an expert report from a physician who does not recognize that a particular disease exists, and does not believe that patients suffering from functional somatic syndromes should have a treatment strategy that includes avoiding activity, promoting rest, or accepting limitations. Otherwise, no one with fibromyalgia, or any other "functional somatic syndrome" such as chronic fatigue syndrome, could actually receive LTD benefits.

In so ruling, this Court must clarify two points. First, Aetna's decision to deny LTD benefits is not an abuse of discretion by virtue of the fact that Aetna initially granted and paid benefits and later denied benefits. The Fifth Circuit has made clear that this does not constitute an abuse of discretion. *Ellis*, 394 F.3d at 274. Moreover, this decision is not based on the notion that Hoffpauir's treating physicians are entitled to greater deference than a reviewing physician.

For the reasons articulated herein, this Court finds that Aetna abused its discretion in denying Hoffpauir LTD benefits, and accordingly,

IT IS ORDERED that the plan administrator's decision is hereby REVERSED and REMANDED for a functional capacity evaluation.

Lake Charles, Louisiana, this 15 day of June, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE